**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Ruford Kyle Daw,<br><br>    Defendant. | No. CR-11-8035-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Suppress Statements and Evidence (Doc. 34). For the reasons outlined below, the motion is granted in part and denied in part.

**BACKGROUND**

On November 14, 2010, in Tonalea, Arizona, Defendant Ruford Daw was arrested after a confrontation between the residents of his house and a neighbors' house, during which Charleston George was shot. When approached by law enforcement officers that night, Defendant stated that he did not wish to speak without an attorney present. He was arrested for Disorderly Conduct and released the next day. On December 17, 2010, he was sitting in a chair in front of his house when he was approached by Officer Vernon Begay and another member of the Navajo Tribal Police. Defendant made statements to the officers, who were investigating a report that he had displayed a gun to Charleston George, and they arrested him for Criminal Nuisance. He was not issued *Miranda* warnings, and once again was released the next day. On January 3, 2011, Criminal Investigator Albert Nez of the Navajo

Tribal Police went to Defendant's house to interview him about the November 14 incident. Nez and Defendant waited for Criminal Investigator Michael Begay to arrive. When Begay arrived, all three men got into his vehicle. At 10:22 a.m., Nez and Begay began interviewing Defendant about the events on the night of November 14 and the afternoon of December 17. The interview was recorded. Neither officer informed Defendant of his *Miranda* rights. The interview lasted thirty-nine minutes, and concluded at 11:01 a.m.

Defendant has moved that any statements made in the January 3 interview be suppressed because the interview was conducted in violation of his Fifth and Sixth Amendment rights. In its response, the government mentioned the statements Defendant made when he was arrested on December 17, which Defendant now states should be suppressed as well.

## ANALYSIS

No one "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In order to protect this right, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1965). These procedural safeguards ordinarily take the form of warnings given by law enforcement officers prior to a custodial interrogation: that a suspect may remain silent, that anything he says will be used against him in court, that he is entitled to an attorney, and that an attorney will be provided by the state should he not be able to afford one.[1] *Id.* These warnings, however, "are due only when a suspect interrogated by the police is 'in custody.'" *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). In order for police to have a person "in custody" short of effecting an actual arrest, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded

---

[1] Under the law of the Navajo Nation, indigent criminal defendants are not provided with counsel, so the warnings Defendant received on November 14 did not include the right to have counsel provided for him.

a request to depart or to allow the suspect to do so." *U.S. v. Beraun-Panez*, 812 F.2d 579, 580 (9th Cir. 1987) (quoting *U.S. v. Hall*, 421 F.2d 540, 545 (2d Cir.1969)). The determination of whether a person was free to leave is based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). Subjective criteria, such as the subject's age, education, intelligence, or previous experience with law enforcement, are not relevant to whether a reasonable person would feel free to leave, and therefore to whether a particular suspect is in custody. *See Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004) ("Indeed, reliance on Alvarado's prior history with law enforcement was improper not only under the deferential standards of 28 U.S.C. § 2254(d)(1), but also as a *de novo* matter.").

In the Ninth Circuit, the factors relevant to whether an accused is "in custody" include the following: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *U.S. v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001). These factors are not exhaustive and "[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk way from the interrogators." *U.S. v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002).

For *Miranda* to apply, the statements must not only be made while the subject is "in custody" but also must be the product of an interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Police interrogation refers "not only to express questioning, but also to any words or actions . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Limited inquiries or requests for biographical information do not constitute interrogation unless they "play upon the fears and weaknesses of a defendant in a manner that amounts to interrogation because it is coercive in nature." *U.S. v. Foster*, 227 F.3d 1096, 1103–04 (9th Cir. 2000).

Although a statement made during a custodial interrogation in which a defendant was

not appraised of his *Miranda* rights may not be used in the prosecution's case in chief, it is admissible for impeachment so long as "the trustworthiness of the evidence satisfies legal standards." *Harris v. New York*, 401 U.S. 222, 224 (1971). On the other hand, "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (emphasis in original). The prosecution has the burden of demonstrating that a confession is voluntary. *Brown v. Illinois*, 422 U.S. 590, 604 (1974). A suspect's statement is not voluntary unless it is "the product of his free and rational choice." *Greenwald v. Wisconsin*, 390 U.S. 519, 521 (1968). To determine whether a statement was voluntary, a court considers whether, under "the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *U.S. v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th. Cir. 1988). In contrast to the custodial determination, the question of voluntariness is subjective and may properly depend upon "the characteristics of the accused," including age, education, intelligence, and experience with law enforcement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also Lynumn v. Illinois*, 372 U.S. 528, 534 (1963).

The Sixth Amendment guarantees the right to counsel during criminal proceedings. U.S. CONST. amend VI. The right attaches "at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S.387, 398 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

**I.  Miranda**

Defendant asserted his *Miranda* rights when he was arrested on November 14, and no statements were taken from him at that time. Invocation of *Miranda*, however, lapses two weeks after a suspect is released from custody, so Defendant's assertions were not applicable to any interaction after November 29, two weeks after he was released. *Maryland v. Shatzer*, 130 S.Ct. 1213, 1223–24 (2010).

On December 17, Defendant was intoxicated and sitting in a chair in front of his house

when he was approached by Officer Begay and another armed officer. Defendant made statements regarding his state of mind and other matters. The officers were armed and in uniform when they approached him, and they arrested him after he made the statements. Nevertheless, Defendant made the statements spontaneously, without being asked any questions about the November 14 shooting. The statements were therefore not the result of an interrogation, and *Miranda* warnings were not required. *Innis*, 446 U.S. at 300. Even if Officer Begay made some preliminary statements to Defendant, although he claims credibly that he did not, there is no suggestion that he asked questions about the November 14 shooting incident. Nothing suggests that Officer Begay's conduct "amount[ed] to interrogation because it [was] coercive in nature." *Foster*, 227 F.3d 1103–04.

In contrast, the January 3, 2011 incident was an interrogation. To determine whether Defendant was "in custody" during that interrogation, the Court will consider the five factors set forth in *Hayden*. These factors and other facts surrounding the encounter are to be considered objectively. *Stansbury*, 511 U.S. at 323. The fact that Defendant had been issued *Miranda* warnings when he was arrested on November 14 may be relevant to whether his statements were voluntary, but is not a factor to consider when determining whether he was "in custody." *Alvarado*, 541 U.S. at 668.

The language used to summon Defendant suggests that Defendant was not in custody. Although investigator Nez identified himself as a law enforcement officer and asked Defendant to talk about the shooting on November 14, he did not order Defendant into the vehicle or use physical force to get him to comply. He informed Defendant that he was not under arrest. The language used to summon Defendant weighs against a finding that he was "in custody." *See Oregon v. Mathiason*, 429 U.S. 492, 494–95 (1977) (suspect who responded to request that he come to police station for questioning not "in custody" during half-hour interrogation).

During the interrogation, however, Nez twice confronted the Defendant with evidence that contradicted his statements. At one point, Nez informed Defendant that pistol bullets had been recovered from the crime scene, and asked if anyone had a pistol. Defendant responded

- 5 -

that he thought one of the members of the other group had one. Nez replied that he had spoken to a member of Defendant's group, named Jerrick, and continues, "Jerrick says you gave him that pistol. Is that a true statement on Jerrick's part? He says when the fight was about to start you gave him that pistol." Furthermore, although the general tone of the interview was cordial, periodically Nez prodded Defendant to tell him the truth, or suggested that Defendant was required to compose a response in his own words, saying , "You gotta tell me," or "I want you to say it." Nez repeatedly challenged Defendant's version of events or his veracity. The statements and evidence officers provided, however, can only moderately be considered "evidence of guilt," and therefore the second element weighs only moderately in favor of custody. *See Beraun-Panez*, 812 F.2d at 579 (defendant was presented with evidence of guilt when officers "told him that witnesses had placed him at the scene").

Regarding the physical surroundings, Defendant was inside a police vehicle, with an officer in the driver's seat and another in the rear seat. Although the government emphasizes that both officers were in plainclothes and the vehicle was unmarked, it does not allege that Defendant did not understand them to be law enforcement officers. Indeed, Nez had shown Defendant his badge, and spoke to Defendant about the conditions under which Defendant may be arrested. Although Defendant may have willingly entered the vehicle, once he was inside, the physical surroundings gave the appearance of being custodial. He was not, for example, in his own home or place of business speaking to police officers. *See U.S. v. Bassignani*, 575 F.3d 879, 885 (interview conducted at conference room at suspect's place of business not custodial). In *U.S. v. Lee*, the Ninth Circuit found that a suspect confronted with inconsistencies in his statements while sitting in a police vehicle parked in front of his house was "in custody" even though he was "not forced into the car" and was affirmatively told he was free to leave. 699 F.2d 466, 468 (9th Cir. 1982). There are very few meaningful distinctions here. The physical surroundings weigh in favor of a finding that Defendant was in custody.

The duration of the detention here weighs against a finding that the interrogation was custodial. The recorded interview lasted only thirty-nine minutes, and the actual interview

time, as opposed to time taken to obtain fingerprints, was only a few minutes more. The Ninth Circuit has held interviews lasting more than an hour to be non-custodial. *U.S v. Crawford*, 372 F.3d 1048, 1052 (9th Cir. 2004). Although not dispositive, the length of the interview suggests that it was not custodial.

Whether officers tell a suspect that he is under arrest or free to leave is highly relevant to the fifth factor in the *Hayden* inquiry. *See*, *e.g.*, *U.S. v. Norris*, 428 F.3d 907, 912 (9th Cir. 2005) (suspect not in custody when told that he was not under arrest and that "his cooperation was voluntary and that he was free to terminate the interview at any time."). Here, Nez emphasized to Defendant that he was not under arrest, stating that "you're not being arrested," and that "if you're gonna get arrested, it's gonna happen later." However, Nez did not tell Defendant he was free to leave. On the contrary, he said, "Whatever you say, *at the end of this interview*, you're going to go back to your house, we're going to drive away."(emphasis added). The Ninth Circuit has found that such a statement, made in a familiar setting, does not create a custodial interrogation. *Bassignani*, 575 F.3d 879, 886 (9th Cir. 2009). Nevertheless, in a setting very similar to the case at hand, where a suspect had entered a police vehicle voluntary and was interviewed in the vehicle near his home, the interview was custodial despite the fact that officers had informed the suspect that he was free to leave. *Lee*, 699 F.2d at 468.

The totality of the circumstances here cannot be distinguished from *Lee*, which therefore controls the outcome. Defendant was in a police vehicle, with an officer to his left and another behind him. The officers were asking questions about a crime, and providing statements and other evidence that contradicted statements made by the Defendant. Although the officers here did not confront Defendant with evidence as aggressively here as the officers in *Lee* did, here the officers never overtly stated that Defendant was free to leave, as they had in *Lee*. Although the Defendant in *Lee* was interrogated in the police vehicle while other officers searched his house, the Ninth Circuit there relied on the circumstances in the police vehicle, rather than the house, to determine that the interrogation was custodial. Here too, then, the interrogation was custodial, and the statements in the car must be suppressed

under *Miranda*. *See Lee*, 699 F.2d at 468.

**II     Voluntariness**

Determining whether a statement is voluntary "requires careful evaluation of all the circumstances of the interrogation." *Mincey v. Arizona*, 437 U.S. 385, 401 (1978). The recording of the interrogation demonstrates that it was not accompanied by "physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Leon Guerrero*, 847 F.2d at 1366. Defendant was not promised leniency in exchange for making a statement; he was not subject to violence; he was not lied to. Nez frequently tells Defendant that he must be honest, but "repeated exhortations to tell the truth do not amount to coercion." *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir.1997). When asked "Is it okay if I have another question, I can come back here and ask you again?" Defendant answered affirmatively. When Nez asked to fingerprint Defendant, Defendant granted him permission. Defendant's statements were made voluntarily.

Defendant also claims that his statements on December 17, 2010 were involuntary and must be suppressed because he was intoxicated. Ordinary intoxication falls far short of the condition that rendered a severely injured hospital patient's confession involuntary in *Mincey*. There, the suspect was "depressed almost to the point of coma," and "was being questioned [while] he was lying on his back, on a hospital bed, encumbered by tubes, needles, and breathing apparatus." 437 U.S. at 399. Neither Defendants' statements on December 17 nor his statements of January 3 were involuntary. Since the December 17 statements were not obtained in violation of *Miranda*, the government may use them in its case in chief. Since the January 3 statements were obtained in violation of *Miranda*, they may not be used in the government's case in chief, but may be used for other purposes. *Harris*, 401 U.S. at 224.

**III.    Sixth Amendment**

Defendant was not indicted until March 8, 2011, so his Sixth Amendment rights had not attached during the incident on January 3, 2011. *Brewer*, 430 U.S. at 398. The statements will not be suppressed under the Sixth Amendment.

**CONCLUSION**

Defendant's statements on December 17 were made prior to any "interrogation" and were therefore not obtained in violation of *Miranda*, and may be used by the government at trial. He was "in custody" for the purposes of *Miranda* when he was interrogated on January 3, 2011, and statements made then may not be used in the government's case-in-chief. The January 3 statements were, however, made voluntarily, and, if appropriate, may be used for other purposes. Defendant's Sixth Amendment rights had not attached during either incident and therefore were not violated.

**IT IS THEREFORE ORDERED**:

1. Defendant's Motion to Suppress (Doc. 34) is **granted in part** and **denied in part.**

2. Defendant's statements on December 17, 2010 may be introduced at trial.

3. Defendant's statements on January 3, 2011 may not be introduced by the government during its case-in-chief.

DATED this 14th day of November, 2011.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge